CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 31, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

ASHANN RA,                              )
    Plaintiff,                          )          Civil Action No. 7:24-cv-00406
                                        )
v.                                      )
                                        )          By: Elizabeth K. Dillon
DAVID ANDERSON, *et al.*,               )              Chief United States District Judge
    Defendants.                         )

**MEMORANDUM OPINION**

Plaintiff Ashann Ra, a Virginia inmate proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983. In his second amended complaint, Ra alleges that officials at the Virginia Department of Corrections retaliated against him in violation of the First Amendment for attempting to bring criminal charges (first claim) and for filing a grievance (second claim) against them. (Dkt. No. 51.) Defendants move to dismiss on qualified-immunity grounds, arguing that Ra's charges and grievance were baseless and that, therefore, bringing them was not protected under the First Amendment. (Dkt. No. 60.) Ra responded to this motion. (Dkt. No. 63.)[1] Also before the court is Ra's motion for a preliminary injunction. (Dkt. No. 65.)

For the reasons stated below, defendants' motion to dismiss will be granted in part (as to Ra's first claim) and denied in part (as to his second claim), and Ra's motion for injunctive relief will be denied.

I. BACKGROUND

**A. Ra's Allegations**

The defendants in this action are David E. Anderson, Lt. J.B. Robinson, Lt. R. Hickman,

---

[1] Ra's response purports to include a motion for directed verdict and to strike defendants' motion to dismiss under Federal Rule of Civil Procedure 12(f). A directed verdict would be premature at this stage of the litigation, and Rule 12(f) is inapposite on the present procedural posture. This motion is denied.

Sgt. C.J. West, Thomas Meyer, Rodney W. Younce, Capt. R.M. Crigger, IHO K. Lowe, and J. Harmon. Ra's allegations relate to events occurring at River North Correctional Center. Defendants move to dismiss Ra's complaint in its entirety. The court construes the second amended complaint as alleging two claims that are described below.

First, Ra alleges that in 2022 and 2023, he filed criminal charges against officials at Sussex II State Prison. (Second Am. Compl. ¶ 2.) Ra pursued charges for abduction based on his Ifa and Santeria religious beliefs. Ra claims that he is "a descendent of Ifa priests/elders forcibly removed from their lands in West Africa and Cherokee tribal lands" and has "inherited their tribal nationalities and traditions as a priest of Ifa . . . ." (*Id.* ¶¶ 3–4.) According to Ra, Harmon screened his legal filings and, pursuant to Hickman's instructions, filed a false disciplinary charge against him. (*Id.* ¶ 8.) The charge stated that Harmon obtained documents from Ra that sought to sue VDOC for holding him hostage. (*Id.* ¶ 10.) Staff confiscated Ra's legal and religious material that he needed to refile criminal charges. The material was confiscated based on the claim that it was gang related or sovereign-citizen related. (*Id.* ¶¶ 12– 13.) Ra denies being a gang member or involvement with sovereign-citizen activities. Robinson, the Officer in Charge, and West, the Hearings Officer, declined to reject the charge. (*Id.* ¶ 16.) Hickman did not correct the charge, and Anderson, the Warden, did not take any corrective action. Ra's security level was increased, which prevented him from being transferred to a lower-security facility. (*Id.* ¶¶ 17–19.)

In his second claim, Ra alleges that on August 7, 2024, Lt. Hickman was "served notice of this lawsuit against her." (*Id.* ¶ 20.) Then, Ra claims that on September 6, 2024, he served Hickman with a prison grievance form that provided "notice pursuant to Va. Code 8.01-227 [and] 49-19 . . . that her censorship of [his] email violated the conditions of her oath/official

2

bond, and demanded that she release said email or [he] would exercise [his] right to remedies under Va. Code 49-19." (*Id.* ¶ 21.)  Ra claims that Hickman filed a disciplinary charge against him as retaliation for the statements in his grievance filing.  (*Id.* ¶¶ 22–23.)[2]  Ra also alleges that defendants Crigger, Lowe, Younce, and Meyers all failed to correct this charge.  (*Id.* ¶¶ 24–26.) This also resulted in an increase of his security level.  (*Id.* ¶ 27.)

Ra seeks expungement of the charges filed against him, transfer to a security-level-3 prison not in the Western Region, compensatory and punitive damages, and the return of confiscated personal property

## B.  Ra's Motion for a Preliminary Injunction

Ra filed a motion that the court has construed as one for preliminary injunctive relief.  Ra asserts that he has been transferred to his third security-level-4 prison in the last nine months, and he is now at Pocahantas Correctional Center.  He complains that staff has knowingly placed him in a pod of gang members and have claimed that Ra is on a hunger strike.  (Dkt. No. 65.)  Ra also notes that he has been denied religious food trays and staff members have confiscated his legal materials and supplies.  Ra asks the court to "adjudicate this matter forthwith before he incurs additional injuries from gangs."  (Dkt. No. 65; *see also* Dkt. No. 67.)  Ra also complains about the lack of access to the law library.  (Dkt. No. 67.)

## II.  LEGAL STANDARDS

## A.  Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal and factual sufficiency.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–63 (2007).  To withstand a motion to dismiss, a pleading "must

---

[2]  The court does not construe the second amended complaint as alleging retaliation for filing this lawsuit in federal court.

3

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The court need neither accept a complaint's legal conclusions drawn from the facts, *id.* at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The court, however, accepts as true the complaint's well-pleaded factual allegations and construes these allegations, and the reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Pleadings by *pro se* litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### B. First Amendment Retaliation

The First Amendment protects inmates from retaliation by correctional officers and officials. To establish a claim for retaliation, Ra must show (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020). First Amendment retaliation claims in the prison context are "treated with skepticism because every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). "Therefore, to

4

state a prima facie case of retaliation, Plaintiff must present concrete facts corroborating the claim." *Wilson v. United States*, 332 F.R.D. 505, 524 (S.D.W. Va. 2019).

Bringing a civil suit, a criminal charge, or a prison grievance is a protected First Amendment activity unless the suit, charge, or grievance is baseless. *See Entler v. Gregoire*, 872 F.3d 1031, 1043 (9th Cir. 2017); *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *cf. S.C. State Ports Auth. v. NLRB*, 75 F.4th 368, 378 (4th Cir. 2023); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 341 (4th Cir. 2008).

## C. Qualified Immunity

Prison officials sued in their individual capacities under § 1983 may invoke the doctrine of qualified immunity, which shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is designed to "protect law enforcement officers from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines." *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005).

The qualified immunity analysis consists of two prongs: (1) whether a statutory or constitutional violation occurred, and (2) whether the right was clearly established at the time of the violation. *Mays v. Sprinkle*, 992 F.3d 295, 301 (4th Cir. 2021) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). If the answer to either question is "no," the officer being sued is entitled to qualified immunity. *Pearson*, 555 U.S. at 232; *Cooper v. Doyle*, 163 F.4th 64, 79 (4th Cir. 2025). To that end, courts possess discretion in deciding which prong to address first. *Pearson*, 555 U.S. at 236. Moreover, while "qualified immunity typically is best addressed at the summary judgment stage after the facts have been developed through discovery," *Riddick v.*

5

*Barber*, 109 F.4th 639, 650 n.5 (4th Cir. 2024), dismissal pursuant to Rule 12(b)(6) is nevertheless appropriate "when the face of the complaint clearly reveals the existence of a meritorious" qualified immunity defense.  *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013).  If the court determines that a government official took action that a reasonable official would have believed was lawful, the official is entitled to dismissal before discovery. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

### D.  Preliminary Injunction

A plaintiff seeking a preliminary injunction must establish all four of the following elements: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  In the context of the administration of a state prison, injunctive relief should be granted only in compelling circumstances.  *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).  The judiciary grants "wide ranging deference" to prison administrators on matters within their discretion.  *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

### III.  ANALYSIS

### A.  The First Claim of Ra's Second Amended Complaint

Accepting his factual allegations as true, drawing all reasonable inferences in his favor, and construing his contentions liberally, Ra seems to assert that, in 2022 or 2023, he attempted to file a criminal complaint against state prison officials for abduction.  The crime he alleged was the forced, historical removal of Ifa priests and elders from their lands in West Africa and Cherokee tribal lands, which, as an ordained Ifa priest, he claimed a derivative right to challenge

6

on an Ifa theory of descendent blood debt.  (Second Am. Compl. ¶¶ 1–4.)  He goes on to allege a

number of official acts in retaliation for his attempt to bring these charges.  (*Id.* at ¶¶ 5–19.)

Defendants argue that the court need not examine Ra's claim any further to grant them

qualified immunity to it, as attempting to bring such criminal charges was not protected First

Amendment activity, and any retaliation they carried out for it did not violate the Constitution.

(Dkt. Nos. 60–61.)

The court, exercising its discretion to address only the second, clearly-established prong

of the qualified-immunity analysis, agrees with defendants.  *See Pearson*, 555 U.S. at 236.

Whatever basis Ra's criminal filings, as described on the face of his pleading, had in Ifa,

they were indisputably baseless in any tribunal where the court might liberally understand him to

have filed them.  Courts phrase their refusal to accord First Amendment protection to baseless

prison litigation a few ways.  *See Entler*, 872 F.3d at 1043 ("baseless"); *Hill*, 630 F.3d at 472

("frivolous"); *cf. BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 530–33 (2002) (declining to

resolve "whether objectively baseless litigation requires any 'breathing room' protection");

*Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996) ("Depriving someone of a frivolous claim . . .

deprives him of nothing at all . . . ."); *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731,

743–44 (1983) ("[B]aseless litigation is not immunized by the First Amendment right to

petition."); *S.C. State Ports Auth.*, 75 F.4th at 378 ("baseless or 'has an objective that is illegal'"

(quoting *Bill Johnson's Restaurants*, 461 U.S. at 738 n.5)); *Darveau*, 515 F.3d at 340–41

("objectively unreasonable").[3]  None of these precedents is perfectly on point, wholly

unabrogated, and authoritatively binding here, but the court has carefully considered their

---

[3] Defendants cite further authorities for similar propositions: *United States v. Citrowske*, 951 F.2d 899, 901
(8th Cir. 1991); *United States v. Price*, 951 F.2d 1028, 1032 (9th Cir. 1991); *United States v. Hylton*, 710 F.2d 1106,
1111–12 (5th Cir. 1983); *Hussein v. Barrett*, No. 11-cv-05317, 2017 WL 1133151, at *5 (N.D. Cal. Mar. 27, 2017).

bearings on defendants' constitutional contention and agrees that, under any formulation, Ra's Ifa blood-oath theory of crime was totally baseless.[4]

Under these same precedents, any First Amendment duty of defendants' to abstain from retaliating against Ra for asserting the theory was not clearly established, so defendants are entitled to qualified immunity to Ra's retaliation claim. *See Pearson*, 555 U.S. at 231–32. Accordingly, defendants' motion will be granted in relevant part, and Ra's first claim will be dismissed along with the defendants only named in that claim: Anderson, Robinson, West, and Harmon. The dismissal will be without prejudice; if Ra can replead a different claim over which this court has jurisdiction, he will be welcome to do so.

## B. The Second Claim of Ra's Second Amended Complaint

Secondly, Ra claims that prison officials retaliated against him for filing a grievance complaining about their screening of his legal mail, perhaps in relation to this federal suit. (Second Am. Compl. ¶¶ 20–25.) Whatever the merits of that grievance were, the court cannot conclude from Ra's pleading that it was utterly baseless to the degree that his attempt to file criminal charges was. So, defendants cannot prevail against this claim on the same ground as against the first, and they do not argue any other ground. (*See* Dkt. No. 61.) Thus, their motion will be denied in relevant part, and Ra's second claim will proceed against the defendants named

---

[4] The court recognizes that Ra claims not to be a sovereign citizen but "a naturalized US citizen, an Ifa/Santeria priest who inherited dual nationalities." (Second Am. Compl. ¶ 13.) To be clear, the court does not find that Ra's attempt to file criminal charges was baseless because the charges shared some apparent similarities with sovereign-citizen ideology but because, so far as the law is concerned, his charges were nonsensical for many of the same reasons, it happens, that sovereign-citizen ideology is also nonsensical. *Cf. United States v. Jackson*, 859 F. App'x 389, 390 n.2 (11th Cir. 2021) (noting appellant's assertion regarding "Cherokee Nation of Moors" indicated he "relied in some sense on tribal sovereign immunity as a source of his own sovereign immunity at law," overlapping with sovereign-citizen arguments); *Askew v. United States*, No. 22-10914, 2023 WL 1775656, at *1 (5th Cir. Feb. 6, 2023) (complaint seeking declaration on basis of "purported status as a member of the Yamassee Creek Nation . . . derives its argument from the so-called 'sovereign citizen movement'" and is "frivolous and entirely without merit"); *United States v. Nabaya*, No. 3:14-cr-00003, 2017 WL 3880660, at *12 (E.D. Va. Sept. 5, 2017) (finding arguments regarding "oaths" and "bonds" of officials are based on sovereign-citizen theories and are frivolous).

in that claim: Hickman, Crigger, Lowe, Younce, and Meyer.  The denial will be without prejudice to defendants' moving again on other grounds.

## C.  Ra's Motion for a Preliminary Injunction

To the extent that Ra seeks the court's interference with prison administration, Ra's motion reflects that he has been transferred, and the defendants in this action have no authority over any aspect of Ra's incarceration at Pocahantas, including his access to legal materials. While a "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," an injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit."  *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945); *see also Brooks v. Zorn*, No. 2:22-cv-00739, 2024 WL 1571688, at *6 (D.S.C. Apr. 11, 2024) (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)) (denying motion that "seeks injunctive relief unrelated to his complaint against non-parties to this lawsuit").  Finally, the court notes that it has already denied a request for injunctive relief by Ra related to his access to the law library at Pocahantas.  (Dkt. No. 44 at 2.)  Accordingly, the court will deny Ra's motion for a preliminary injunction.

## IV.  CONCLUSION

For the above reasons, defendants' motion to dismiss (Dkt. No. 60) will be granted in part and denied in part, and Ra's motion for injunctive relief will be denied (Dkt. No. 65).  A consistent order will be issued.

Entered: March 31, 2026.


*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge

9